IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL J. HEFFLEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 2:17-cv-01624 ) ) |
| KIMBERLY STEELE, et al., | ) ) ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

On April 12, 2019, *pro se* Plaintiff Daniel Heffley filed a Second Amended Complaint ("SAC") against twelve (12) individual Defendants. (2d Am. Compl., ECF No. 38.) In addition, Plaintiff filed a Motion to Appoint Counsel. (Mot. to Appoint, ECF No. 39; Suppl. Resp., ECF No. 98.)

Eight of those Defendants filed various Motions to Dismiss. (Mots. To Dismiss, ECF Nos. 43 (William Clifford), 45 (Stephanie Muick), 47 (Arnold Caplan), 50 (Elizabeth Molnar), 59 (Elizabeth Bennington), 64 (Deborah Witchel), 66 (Neil Rosenblum),[1] 79 (Katherine Gibson).[2]) Plaintiff filed several documents on the docket that the Court considers to be responses to the Motions to Dismiss and will consider them in its disposition of the pending

---

[1] Defendant Rosenblum did not attach a Certificate of Service to his Motion to Dismiss. However, in response to the Court's Order, Rosenblum later filed the Certificate of Service showing that a copy of his Motion was mailed to Plaintiff on the date it was electronically filed with the Court, thereby providing Plaintiff notice of the Motion pursuant to Federal Rule of Civil Procedure 5. (ECF No. 93.)

[2] Defendant Gibson did not attach a Certificate of Service to her Motion to Dismiss. However, in response to the Court's Order, Gibson later filed the Certificate of Service showing that a copy of her Motion was mailed to Plaintiff one day after it was electronically filed with the Court, thereby providing Plaintiff notice of the Motion pursuant to Federal Rule of Civil Procedure 5. (ECF No. 94.)

1

Motions. (ECF Nos. 71, 72,³ 73, 74,⁴ 76–78, 83, 84, 91, 95,⁵ 98.) Defendant Stephanie Muick filed a reply. (ECF No. 75.)

The remaining four Defendants (Kimberly Steele, Mark Steele, Jocelyn Steele, and James Bozigar) have not entered any appearance by counsel on the docket, and the Court issued a Show Cause Order on June 5, 2019, as to why those Defendants should not be dismissed from the case for lack of service of process. (Order, ECF No. 82.) Plaintiff responded.⁶ (ECF Nos. 85, 87.)

With these documents and filings, the Court embarks on a claim-by-claim analysis of the SAC and disposition of the miscellaneous motions.⁷ This Opinion comes in three parts. The first part provides the procedural history and factual background as alleged in the SAC. The second part of this opinion addresses Plaintiff's Motion to Appoint Counsel. And the third part addresses Defendants' Motions to Dismiss.

I. **BACKGROUND**

Plaintiff initiated this action on December 15, 2017 (ECF No. 1), and shortly thereafter filed his First Amended Complaint ("FAC"). (1st Am. Compl., ECF No. 4). "The core assertions in the Amended Complaint all appear to relate to litigation in the Pennsylvania state courts

---

³ The Court will consider ECF No. 72 to the extent it responds to the Motions to Dismiss, but the Court denied all requests for relief stated therein in its Order dated July 11, 2019. (ECF No. 90.)

⁴ The Court will consider ECF No. 74 to the extent it responds to the Motions to Dismiss, but the Court denied all requests for relief stated therein in its Order dated July 11, 2019. (ECF No. 90.)

⁵ The Court will consider ECF No. 95 to the extent it responds to the Motions to Dismiss, but the Court denied all requests for relief stated therein in its Order dated July 24, 2019. (ECF No. 96.)

⁶ Because service was not waived by Kimberly Steele, Mark Steele, Jocelyn Steele, and James Bozigar, Rule 4(l)(1) required Plaintiff to prove service. Plaintiff's response to the Court's Order to Show Cause failed to prove that he accomplished proper service on these four defendants. (ECF Nos. 85, 87.) Plaintiff attached photocopies of certified mailing cards to his response, but these cards do not show that he properly served the defendants, nor did he attach an affidavit as required by Rule 4(l)(1). *See* Fed. R. Civ. P. 4(l)(1).

⁷ In an effort to manage the docket, the Court has periodically issued Orders in response to Plaintiff's filings and other miscellaneous motions. (*See* Orders, ECF Nos. 86, 90, 92, 96.) To the extent that the Court denied Plaintiff relief in those Motions, the Court will not revisit them here.

2

regarding child custody matters, and the Defendants in this case are all seemingly participants in those proceedings, but most certainly as private actors." (Mem. Order, ECF No. 35, at 2.)

The Court reviewed that FAC and dismissed Plaintiff's claims—some with prejudice and some without. (*Id.* at 1.) The Court dismissed with prejudice all claims based on alleged violations of the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution as to all Defendants. (*Id.*) The Court also dismissed with prejudice various state law claims based on "perceived violations of [Defendants'] various professional ethics codes" and "positions/testimony taken or made by such persons in the state court litigation." (*Id.* at 2.) Plaintiff was given leave to amend his FAC solely to plead "specific and particular" claims brought pursuant to the Americans with Disabilities Act ("ADA").

Plaintiff filed his Second Amended Complaint on April 12, 2019. Despite the Court's instructions to include only claims brought under the ADA, Plaintiff reasserted the vast majority of his constitutional and state law claims in the SAC. Plaintiff's ADA claims consisted of the same factual allegations included in his FAC.

## II.     **Plaintiff's Motion to Appoint Counsel**

Prior to filing the SAC, Plaintiff filed a "Motion to Request the Appointment of Advisory Counsel," (ECF No. 30), which the Court denied without prejudice as that motion failed to "demonstrate[] an entitlement or authorization in law requiring or counseling the appointment of counsel in this civil action, nor does the Motion set out a basis counseling the Courts search for pro bono counsel on the Plaintiff's behalf." (Order, ECF No. 34.) Plaintiff then renewed his request for appointed counsel. (ECF No. 39.) Although this Court denied the duplicate request (ECF No. 41), the Court incorporates Plaintiff's arguments presented there (and in ECF No. 98)

into Plaintiff's Motion for Appointed Counsel (ECF No. 39), and concludes that Plaintiff's Motion to Appoint Counsel (ECF No. 39), should be denied.

"Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). It is true that Congress granted this Court authority to request appointed counsel for a civil litigant (such as Plaintiff) that is unable to afford counsel. That statute is located at 28 U.S.C. § 1915(e)(1). But when addressing a *pro se* plaintiff's request for appointed counsel, the district court must undertake a two-part inquiry.

First, as a threshold matter, the district must determine that Plaintiff's case "has arguable merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Under Third Circuit case law, a district court is required to complete this first step in every instance when a plaintiff requests appointed counsel. *Houser v. Folino*, 927 F.3d 693, 698 (3d Cir. 2019) ("[I]t would be an abuse of discretion to appoint counsel to advance claims with no arguable merit in law and fact."). And when the court examines whether the plaintiff's case has "merit in fact and law" it should scrutinize the allegations contained in the complaint. *Montgomery*, 294 F.3d at 499. Specifically, the court should demand more than "mere bald assertions" in the plaintiff's pleadings. *Id.* Rather, the plaintiff must present some factual showing that demonstrates he has more than an "'extremely slim' chance of success on the merits." *Id.* at 501 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986)).

Second, "[i]f the district court determines that the plaintiff's claim has arguable merit in fact and law, the court should then consider a number of additional factors that bear on the need for appointed counsel." *Tabron*, 6 F.3d at 155. The factors include, but are not limited to:

(1) the plaintiff's ability to present his or her own case;

(2) the complexity of the legal issues;

(3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;

(4) the amount the case is likely to turn on credibility determinations;

(5) whether the case will require the testimony of expert witnesses;

(6) whether the plaintiff can attain and afford counsel on his own behalf.

*Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997) (citing *Tabron*, 6 F.3d at 155–56, 157 n.5). But even when considering these factors, "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery*, 294 F.3d at 499 (citing *Parham v. Johnson*, 126 F.3d 454, 4568 (3d Cir. 1997)).

Here, Plaintiff fails to satisfy the threshold inquiry. Plaintiff's claims have no arguable merit. And as the Court will explain in greater detail below, Plaintiff's SAC fails to state a claim for which this Court can grant relief. The Court certainly appreciates that litigation in federal court can be difficult to navigate. But this is not a situation in which Plaintiff's case is being dismissed for "tiny and truly inconsequential faux pas regarded as errors in law." (ECF No. 39.) Rather it will be dismissed because Plaintiff's recitation of the facts in the SAC simply did not describe (or even suggest) an ADA violation. No amount of "legal language" or "lawyer speak" would or could change that reality.

In the Court's estimation, there is no requirement to inquire further since Plaintiff fails the threshold inquiry. But, even assuming the Plaintiff's SAC contained some arguable merit in law or fact, the Court would still exercise its discretion to deny Plaintiff's motion. The *Tabron* factors—which serve as a guidepost for the Court—counsel against appointing an attorney in this

5

case. Admittedly, the first *Tabron* factor—the plaintiff's ability to present his case—cuts in the Plaintiff's favor to an extent. Plaintiff suffered a stroke years ago and litigated this case through his facilitator, which would create at least some difficulties in presenting his case. The Court notes, however, that Plaintiff filed his complaint, application to proceed *in forma pauperis*, and a litany of other documents, all of which suggests he would not be incapable of prosecuting his case. The sixth *Tabron* factor, which inquires into Plaintiff's capacity to retain counsel on his own, also cuts in Plaintiff's favor since he is proceeding *in forma pauperis* in this case. But on balance, the remaining *Tabron* factors are either neutral or against Plaintiff's request for counsel. The legal issues in this case, after Plaintiff's Constitutional claims were dismissed, only involve the ADA. And these ADA claims involve a well-establish, generally straightforward legal framework. Moreover, the Court's review of the SAC suggests that Plaintiff's case neither requires intensive factual investigation, nor is likely to turn on credibility determinations. Each of these factors weighs against appointing counsel. And while it is unclear whether Plaintiff would proffer exert testimony, there is no requirement that he do so in order to be successful. The factor asking whether the case requires expert testimony, then, is at best neutral toward Plaintiff's position. The *Tabron* factors, coupled with the principle that volunteer lawyer time should be preciously guarded, leads the Court to conclude that appointed counsel would be inappropriate in this case.

Therefore, in the Court's estimation, Plaintiff fails to satisfy either prong set out by our Court of Appeals in *Tabron* and its progeny. For those reasons, Plaintiff's Motion to Appoint Counsel (ECF No. 39), is denied.

## III. Defendants' Motions to Dismiss

### A. Legal Standard—Motions to Dismiss and *Pro Se* Litigants

A claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court conducts a two-part analysis. First, the Court separates the factual and legal elements of a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The Court "may disregard any legal conclusions" *Id.* Second, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The Court, however, need not accept as true any unsupported conclusions, unsupported inferences, nor "threadbare recitals of elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

*Pro se* pleadings, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). "If the Court can *reasonably* read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements." *Brown v. O'Rourke*, No. 17-85, 2018 U.S. Dist. LEXIS 132671, at *18 (W.D. Pa. Aug. 6, 2018). Thus, the Court may consider facts and make inferences where it is appropriate. But "any pleading must

7

still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Strader v. U.S. Bank Nat'l Ass'n*, No. 17-684, 2018 U.S. Dist. LEXIS 20249, at *13 n.8 (W.D. Pa. Feb. 7, 2018) (quoting *Iqbal*, 556 U.S. at 678; and citing *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015)).

## B. Discussion

In its Memorandum Order, the Court dismissed all claims with prejudice except claims arising under the ADA, which Plaintiff was given leave to amend to plead with specificity beyond "[g]eneral broadside/boilerplate references." (Mem. Order, at 2.) Therefore, the Court will only analyze the SAC to the extent is appears to state a claim under ADA.[8] Claims that could be construed under another legal authority (e.g., the federal Constitution or state law) are beyond the scope of Plaintiff's leave to amend and will not be considered.

The first problem is that the SAC does not specify a section or even a title under which Plaintiff's claims are brought.[9] It does not make a reference to any ADA duty, let alone which Defendants supposedly violated which duties. Plaintiff failed to comply with the Court's Memorandum Order with respect to amending his ADA claims:

> [Plaintiff] has pled no facts as to any specific duty or obligation of any Defendant in this action owed to him under the ADA, and no specific facts as to how any Defendant has violated any such ADA-generated duty. General broadside/boilerplate reference to that statute, or complaints about the conduct of

---

[8] Plaintiff failed to follow the Court's instructions in its Memorandum Order to amend his FAC solely to state claims under the ADA, as the seventy-six (76) page SAC continues to allege violations under "the Constitution" and § 1983. Nonetheless, consistent with the direction of *Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019), the Court has carefully examined the allegations of the SAC. The allegations in that case have several things in common with Plaintiff's SAC. First, all parties in this case appear to be citizens of Pennsylvania, barring the assertion of subject matter jurisdiction under 28 U.S.C. § 1332. Second, even read broadly, there are no facts asserted that would "show" a deprivation of a federal right under "color of state law" by a state actor. Third, even considering all of the facts in Plaintiff's favor, they at best assert only grievances based on Pennsylvania law and regulations.

[9] This Court instructed Plaintiff that he "must set out . . . that particular Defendant's violation of a specific federal statutory duty under the ADA." (Mem. Order, at 3.) Plaintiff failed to follow this instruction by not providing a specific statute or specific duty for any Defendant. Because Plaintiff is *pro se*, this Court will endeavor to test Plaintiff's claims against the various frameworks within the statute.

> any Defendant do not suffice. But, because as to the ADA assertions alone the Court cannot conclude that any amendment would be futile, the Plaintiff will be granted one, last, final, opportunity to file a Second Amended Complaint, but it must be specific and particular as to any ADA claim against any particular Defendant, and must set out sufficient, specific facts to make a showing of the ADA-based obligation of that specific Defendant, and that particular Defendant's violation of a specific federal statutory duty under the ADA.

(Mem. Order, at 2–3.) Yet even if the Court looks past this problem, the SAC simply fails to plead any cognizable ADA claim.

Congress enacted the ADA to eliminate discrimination based on disability. But the ADA does not cover every instance of such discrimination. Rather, the it covers such discrimination in at least three situations, each of which is assigned its own "title" or subsection of the ADA statute. *Bowers v. NCAA*, 346 F.3d 402, 433 (3d Cir. 2003). "Title I of the ADA prohibits discrimination in employment . . . ." *Id.* (citing 42 U.S.C. § 12117). Because Plaintiff's claims do not relate to any employment, his claims cannot arise under Title I. "Title III prohibits discrimination in public accommodations." *Id.* (citing 42 U.S.C. § 12182). "Title III is designed to prevent a facility offering public accommodation from denying individuals with disabilities 'goods[ and] services.'" *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 97 (2d Cir. 2012) (quoting 42 U.S.C. §§ 12182(a), (b)(2)(A)(ii)). The SAC does not plead any allegations related to "public accommodations," nor can the Court discern any plausible "public accommodations" claim. Therefore, Title III offers Plaintiff no hook on which to hang his grievances.

This leaves Title II.[10] "Title II prohibits discrimination by a 'public entity.'" *Id.* (citing 42 U.S.C. § 12132). And "[t]he term 'public entity' means—(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State of States or

---

[10] Title V provides the anti-retaliation provision of the ADA and requires a plaintiff to show that a defendant took adverse action against the plaintiff at least in part because the plaintiff engaged in protected conduct under the ADA. The Court concludes that Plaintiff's grievances do not suggest (much less sufficiently plead) a retaliation claim because of (even in part) Plaintiff's engagement in protected conduct. To the contrary, the SAC pleads that the Defendants' conduct was motivated by a desire to deprive Plaintiff of his paternal rights.

9

local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1) (internal citation omitted). In other words, Title II "addresses discrimination by governmental entities in the operation of public services, programs, and activities, including transportation." *Buchanan v. Maine*, 469 F.3d 158, 170 (1st Cir. 2006). Discrimination in the context of the family courts then may fall under Title II. *See, e.g., Goldblatt v. Geiger*, 867 F. Supp. 2d 201, 208–09 (D.N.H. 2012) (quoting *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004), for its holding that "Title II protects a qualified individual's fundamental right of access to the courts").

Defendant William Clifford argues that Title II of the ADA does not impose liability to individuals in their individual capacity. Although other courts of appeals have held that individuals are not liable under Title II of the ADA, our Court of Appeals "has yet to address individual liability under Title II of the ADA." *Brown v. Deparlos*, 492 F. App'x 211, n.2 (3d Cir. 2012); *but see Emerson v. Thiel College*, 296 F.3d 184, 188–89 (3d Cir. 2002) (suggesting in *dicta* that individuals cannot be held liable under Title II of the ADA). Regardless, in order to state a claim under Title II, Plaintiff must show that a Defendant meets the statutory definition of a "public entity." *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) ("Bowens has sued state employees in their individual capacities, not any 'public entity' as the statute requires."); *Williams v. Hayman*, 657 F. Supp. 2. 488, 501–02 (D.N.J. 2008) ("On its face, the statutory definition of 'public entity' does not extend to individual governmental employees.").

Some case law in our circuit suggests that defendants may be sued under Title II in their official capacities for prospective relief (e.g., and injunction against future discrimination). *Anderson v. Bickell*, No. 3:CV-14-1792, 2017 U.S. Dist. LEXIS 27653, at *38 (M.D. Pa. Feb. 28, 2017) ("However, 'federal ADA claims for prospective injunctive relief against state

officials' in their official capacities are permitted to continue." (citing *Koslow v. Pennsylvania*, 302 F.3d 161, 179 (3d Cir. 2002)). Most recently, in *Davis v. City of Phila.*, a plaintiff's claims against public officers in their official capacities survived the motion to dismiss stage. No. 18-0668, 2019 U.S. Dist. LEXIS 5362, at *8 (E.D. Pa. Jan. 11, 2019). The district court concluded that because our Court of Appeals held "in the Title I context that an individual defendant may be held liable 'in his representative—not his individual—capacity . . . [for] prospective injunctive relief,'" plaintiff's claim for injunctive relief may survive. *Id.* (quoting *Koslow v. Pennsylvania*, 302 F.3d 161, 178–179 (3d Cir. 2002)). The district court did dismiss Title II claims to the extent they were against the defendants in their individual capacities. *Id.* at *9.

Yet even when Title II of the ADA does provide a cause of action against an individual defendant in her or his official capacity there remains one seemingly obvious, but vital requirement: The defendant must actually hold an official position. After all, a claim against a public officer in her or his official capacity is essentially a claim against the governmental entity that employs the official. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). "A claim against a person 'in his former official capacity' has no meaning." *Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997); *see also* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."). This makes particular sense when the relief sought is prospective injunctive relief, because a defendant who no longer holds official office would be entirely unable to provide relief to the plaintiff. Thus, because Title II of the ADA allows suits against a defendant in her or his official capacity solely for prospective injunctive relief, the suit

must actually be against someone who can provide such relief in their official or "public" capacity.

Therefore, Plaintiff's ADA claims against any Defendant in his or her individual capacity must be dismissed. Further, any claims against any Defendant seeking money damages (including punitive damages) must be dismissed.[11] Finally, even claims that could arguably be construed as being against a defendant in her or his official capacity for prospective relief must be dismissed when the defendant no longer holds any official position. The Court then must turn to each individual Defendant to determine whether any Title II ADA claims survive these hurdles:

- **Kimberley Steele:**[12] The SAC fails to tie Kimberley Steele to any official capacity associated with a public entity. Rather, the SAC sues her "in her capacity as spouse [to Plaintiff] and individual." (SAC, at 1.) To the extent that the SAC seeks to state a Title II ADA claim against Kimberly Steele, it fails to state a valid claim and will be dismissed with prejudice.

- **Mark Steele:**[13] The SAC fails to tie Mark Steele to any official capacity associated with a public entity. Rather, the SAC sues him "in his capacity as an individual." (SAC, at 1.) Indeed, the Court sees nothing in the SAC that even

---

[11] "Claims for punitive damages may not be awarded in private suits brought under the ADA." *Anderson v. Bickell*, No. 3:CV-14-1792, 2017 U.S. Dist. LEXIS 27653, at *39 n.6 (M.D. Pa. Feb. 28, 2017) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)).

[12] The claims against Kimberley Steele may be dismissed under Rule 4(l)(1) and Rule 4(m) due to Plaintiff's failure to prosecute the case. *See* Fed. R. Civ. P 4(l)(1), (m). In addition, after conducting a review under 28 U.S.C. § 1915(e), the claims will be dismissed with prejudice because the Court concludes, for the reasons discussed above, that Kimberley Steele cannot possibly fall within the scope of Title II of the ADA.

[13] The claims against Mark Steele may be dismissed under Rule 4(l)(1) and Rule 4(m) due to Plaintiff's failure to prosecute the case. *See* Fed. R. Civ. P 4(l)(1), (m). In addition, after conducting a review under 28 U.S.C. § 1915(e), the claims will be dismissed with prejudice because the Court concludes, for the reasons discussed above, that Mark Steele cannot possibly fall within the scope of Title II of the ADA.

suggests a connection to a public entity. To the extent that the SAC seeks to state a Title II ADA claim against Mark Steele, it fails to state a valid claim and will be dismissed with prejudice.

- **Jocelyn Steele:**[14] The SAC fails to tie Jocelyn Steele to any official capacity associated with a public entity. Rather, the SAC sues her "in her capacity as an individual." (SAC, at 1.) To the extent the SAC seeks to state a Title II ADA claim against Jocelyn Steele, it fails to state a valid claim and will be dismissed with prejudice.

- **Elisabeth Bennington:** According to the SAC, Elisabeth Bennington served as the attorney for Plaintiff's wife during the underlying custody dispute. Plaintiff sued Bennington "in her capacity as a principle [sic] of Bennington Law Firm, LLC, and as an individual." (SAC, at 1.) It is clear from the face of the SAC that Bennington's involvement was that of a privately retained attorney in a custody proceeding. Plaintiff pleads no facts that give the Court any indication that Bennington could be acting on behalf of a public entity. In other words, the ADA simply does not provide Plaintiff relief for the conduct which he alleges. To the extent that the SAC seeks to state a Title II ADA claim against Elisabeth Bennington, it fails to state a valid claim and will be dismissed with prejudice.

- **Deborah Witchel:** The SAC names Deborah Witchel "in her capacity as therapist, and as an individual." (SAC, at 1.) Simply put, the SAC does not present any facts that could plausibly show that Witchel falls under Title II's

---

[14] The claims against Jocelyn Steele may be dismissed under Rule 4(l)(1) and Rule 4(m) due to Plaintiff's failure to prosecute the case. *See* Fed. R. Civ. P 4(l)(1), (m). In addition, after conducting a review under 28 U.S.C. § 1915(e), the claims will be dismissed with prejudice because the Court concludes, for the reasons discussed above, that Jocelyn Steele cannot possibly fall within the scope of Title II of the ADA.

13

definition of "public entity." Instead, the allegations all suggest that Witchel was a counselor or therapist to Plaintiff's minor children in conjunction with the underlying state court proceedings. (SAC, at 30–31.) And Plaintiff's requested relief, as to Witchel, includes requests for compensatory and punitive damages. (SAC, at 31–32.). To the extent that the SAC seeks to state a Title II ADA claim against Deborah Witchel, it fails to state a valid claim and will be dismissed with prejudice.[15]

- **Katherine Gibson:** According to the SAC, Katherine Gibson was a court-appointed counselor for Plaintiff's minor children during the underlying state court proceedings. The SAC names Gibson "in her capacity as an agent of Isaly Counseling Services and as an individual." (SAC, at 1.) As with Defendant Witchel, the Plaintiff's allegations against Gibson are all against her as an individual—not as a public entity as required by Title II. Plaintiff's allegations solely relate to Gibson's role as a counselor for Plaintiff's minor children during the state court proceedings. And Plaintiff's requested relief seeks compensatory

---

[15] Even if the claims against Witchel could be construed as seeking prospective injunctive relief against her in her official capacity, the claims would still be dismissed. Whether or not Witchel's role as a therapist during the underlying family court litigation counts as an "official capacity," there is no doubt that any such official position ceased when Witchel's role in the family court litigation concluded. Thus, any "official capacity" claim against Witchel would be one against her in her former official capacity, which is impermissible. What's more, even if Title II of the ADA did provide a cause of action against defendants in their individual capacities, Plaintiff's allegations against Witchel relate to her role conducting interviews with Plaintiff's minor children, sending letters to the family court, and otherwise gathering information in her role as court-appointed counselor. (SAC, at 31–32.) Thus, Plaintiff's allegation against Witchel in the SAC all relate to conduct that would fall within the scope of Witchel's judicial immunity. *See Hughes v. Long*, 242 F.3d 121 (3d Cir. 2001) (holding that custody evaluators in family court cases are entitled to judicial immunity); *Gardner by Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) ("Guardian ad litem would be absolutely immune in exercising functions . . . in which the guardian acts as an actual functionary or arm of the court."). And courts outside our Circuit have applied the doctrines of judicial immunity and quasi-judicial immunity to claims brought under the ADA. *See Duvall v. Cty. Of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001); *but see Geness v. Pennsylvania*, 388 F. Supp. 3d 530, 537–38 (W.D. Pa. 2019) (questioning whether judicial immunity would apply to an ADA claim against the Administrative Office of Pennsylvania Courts, which is undoubtedly a "public entity" under the ADA, but not addressing whether judicial immunity would apply to an ADA claim brought against an individual whose functions qualify her or him for immunity).

and punitive damages. (SAC, at 36.) To the extent that the SAC seeks to state a Title II ADA claim against Katherine Gibson, it fails to state a valid claim and will be dismissed with prejudice.[16]

- **Neil Rosenblum:** The SAC names Neil Rosenblum "in his capacity as a principle [sic] in Allegheny Forensic Associates and [as] an individual." (SAC, at 1.) During the underlying state court litigation, Rosenblum served as a custody psychological evaluator. Nothing in the complaint suggests that Rosenblum falls within the definition of a "public entity" for the purposes of Title II of the ADA. Instead, like Defendants Witchel and Gibson, Rosenblum is being sued in his individual capacity, and Plaintiff cannot plausibly allege that Rosenblum was a "public entity." In addition, Plaintiff seeks compensatory and punitive damages from Rosenblum—which is impermissible under Title II of the ADA. To the extent that the SAC seeks to state a Title II ADA claim against Neil Rosenblum, it fails to state a valid claim and will be dismissed with prejudice.[17]

---

[16] As with Defendant Witchel, to the extent that any claim against Gibson could be construed as a claim against her in a representative capacity—which the Court concludes it cannot—the claims would still be dismissed. First, even if Gibson's role as a court appointed counselor counted as an "official position," such that she could be sued in her official capacity, the SAC does not plausibly show that she is still in that position. Instead, the SAC is premised on the family court proceedings being over—indeed that is the bedrock principle of Plaintiff's entire argument. Therefore, Gibson would not be a position to provide any prospective injunctive relief—to the extent that Plaintiff seeks any—and is therefore not a proper defendant in an official capacity. Second, even if Title II of the ADA did allow suits against individuals in their individual capacities, like Witchel, Gibson would be shielded by judicial immunity for her functions in the underlying proceedings.

[17] As with Defendants Witchel and Gibson, to the extent that any claim against Rosenblum could be construed as a claim against him in a representative capacity—which the Court concludes it cannot—the claims would still be dismissed. First, even if Rosenblum's role as a custody psychological evaluator counted as an "official position," such that he could be sued in his official capacity, the SAC does not plausibly show that he is still in that position. Instead, the SAC is premised on the family court proceedings being over—indeed that is the bedrock principle of Plaintiff's entire argument. Therefore, Rosenblum would not be a position to provide any prospective injunctive relief—to the extent that Plaintiff seeks any—and is therefore not a proper defendant in an official capacity. Second, even if Title II of the ADA did allow suits against defendants in their individual capacities, like Witchel and Gibson, Rosenblum would be shielded by judicial immunity for his functions in the underlying proceedings.

- **James Bozigar:**[18] The SAC names James Bozigar "in his capacity as therapist, and as an individual." (SAC, at 1.) The SAC suggests—but does not clearly allege—that Bozigar served as a therapist during the underlying custody dispute. None of the allegations against Bozigar assert a valid claim under the ADA. Instead, the only reference to the ADA, with respect to Bozigar, is a blanket assertion that Bozigar's conduct violate the ADA. There is no allegation that Bozigar falls within the scope of Title II of the ADA, nor is any such assertion plausible. To the extent that the SAC seeks to state a Title II ADA claim against James Bozigar, it fails to state a valid claim and will be dismissed with prejudice.

- **Elisabeth Molnar:** According to the SAC, Elizabeth Molnar served as attorney for Plaintiff during the underlying custody dispute. Plaintiff sued Molnar "in her capacity as council [sic] to plaintiff, principle [sic] in Raphael, Ramsden and Behers, PC, and as an individual." (SAC, at 1.) It is clear from the face of the SAC that Molnar's involvement in the facts as pled was that of a privately retained attorney in a custody proceeding. Plaintiff pleads no facts that give the Court any indication that Molnar could be acting on behalf of a public entity. In other words, the ADA does not provide Plaintiff relief for the conduct which he alleges. To the extent that the SAC seeks to state a Title II ADA claim against

---

[18] The claims against James Bozigar may be dismissed without prejudice under Rule 4(l)(1) and Rule 4(m) due to Plaintiff's failure to prosecute the case. *See* Fed. R. Civ. P 4(l)(1), (m). In addition, after conducting a review under 28 U.S.C. § 1915(e), the claims will be dismissed with prejudice because the Court concludes, for the reasons discussed above, Plaintiff cannot state a claim that James Bozigar falls within the scope of Title II of the ADA. Moreover, as with Defendants Witchel, Gibson, and Rosenblum, to the extent that any claim against Bozigar could be construed as a claim against him in a representative capacity—which the Court concludes it cannot—the claims would still be dismissed. First, even if Bozigar's role as a therapist counted as an "official position," such that he could be sued in his official capacity, the SAC does not plausibly show that he is still in that position. Instead, the SAC is premised on the family court proceedings being over—indeed that is the bedrock principle of Plaintiff's entire argument. Therefore, Bozigar would not be a position to provide any prospective injunctive relief—to the extent that Plaintiff seeks any—and is therefore not a proper defendant in an official capacity. Second, even if Title II of the ADA did allow suits against defendants in their individual capacities, like Witchel, Gibson, and Rosenblum, Bozigar would be shielded by judicial immunity for his functions in the underlying proceedings.

Elisabeth Molnar, it fails to state a valid claim and will be dismissed with prejudice.

- **Stephanie Muick:** The SAC names Stephanie Muick[19] "in her capacity as a court appointed council [sic], principle [sic] of Cervone Law and as an individual." (SAC, at 1.) During the underlying state court litigation, Muick served as a court appointed attorney for Plaintiff. Thus, Muick cannot plausibly fall within the scope of Title II of the ADA. Instead, she acted as an attorney working on behalf of a private individual—the Plaintiff. To the extent that the SAC seeks to state a Title II ADA claim against Stephanie Muick, it fails to state a valid claim and will be dismissed with prejudice.

- **Arnold Caplan:** The SAC names Caplan "in his capacity as a court appointed [guardian ad litem], principle [sic] in Caplan & Chester and as [an] individual." (SAC, at 1.) None of Plaintiff's claims against Caplan plausibly allege that Caplan falls within the scope of Title II of the ADA. Caplan was appointed as the guardian ad litem for Plaintiff in the underlying custody dispute. This, however, does not qualify Caplan as a "public entity" for purposes of the ADA. Moreover, it is clear that Caplan's capacity as a principal in a law firm and as an individual falls far outside the scope of Title II of the ADA's coverage. And the relief that Plaintiff seeks is for compensatory and punitive damages. (SAC, at 67.) To the

---

[19] In her Motion to Dismiss, (ECF No. 46), Muick uses the surname "Muick-Cervone," and at times refers to herself simply as "Cervone." For simpler cross-reference to the SAC, however, the Court will use "Muick."

extent that the SAC seeks to state a Title II ADA claims against Arnold Caplan, it fails to state a valid claim and will be dismissed with prejudice.[20]

- **William Clifford:** According to the SAC, William Clifford was appointed by the court to serve the interests of Plaintiff's children during the custody dispute. Clifford is named in the SAC "in his capacity as a partner in Dickie, McCamey & Chilcote and as an individual." (SAC, at 1.) In these roles, Clifford cannot plausibly be said to be a "public entity" for the purposes of Title II of the ADA. Nothing in the substance of the SAC supports the belief that Clifford falls within the scope of Title II of the ADA. As with Defendant Bennington, the ADA simply does not provide a remedy for the conduct Plaintiff alleges against Clifford. To the extent that the SAC seeks to state a Title II ADA claims against William Clifford, it fails to state a valid claim and will be dismissed with prejudice.

---

[20] Moreover, as with Defendants Witchel, Gibson, Rosenblum, and Bozigar, to the extent that any claim against Caplan could be construed as a claim against him in a representative capacity—which the Court concludes it cannot—the claims would still be dismissed. First, even if Caplan's role as a court appointed guardian ad litem counted as an "official position," such that he could be sued in his official capacity, the SAC does not plausibly show that he is still in that position. Instead, the SAC is premised on the family court proceedings being over—indeed that is the bedrock principle of Plaintiff's entire argument. Therefore, Caplan would not be in a position to provide any prospective injunctive relief—to the extent that Plaintiff seeks any—and is therefore not a proper defendant in an official capacity. Second, even if Title II of the ADA did allow suits against defendants in their individual capacities, like Witchel, Gibson, Rosenblum, and Bozigar, Caplan would be shielded by judicial immunity for his functions in the underlying proceedings. *See Gardner by Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) ("Guardian ad litem would be absolutely immune in exercising functions . . . in which the guardian acts as an actual functionary or arm of the court.").

## IV. CONCLUSION

A defendant-by-defendant examination of the SAC, then, leads the Court to conclude that Plaintiff entirely failed to state a claim for which relief can be granted.[21] As a result, all of Plaintiff's ADA-based claims—which are the only claims remaining at this stage—must be dismissed. The Court recognizes the earnestness with which Plaintiff seeks to vindicate what he perceived as acts of disability discrimination. But the reality is that the ADA simply does not apply to every act of discrimination based on disability, and in this case, it cannot serve as a basis of relief for Plaintiff. Because this Court previously dismissed claims allegedly stemming from the Constitution and state law, there is no remaining legal authority on which Plaintiff can maintain his grievances in federal court. Without the necessary law on which to rest his facts, Plaintiff cannot litigate these claims in federal court. This case is dismissed with prejudice.

Mark R. Hornak
Chief United States District Judge

cc: All counsel of record
Date: October 11, 2019

---

[21] Plaintiff has also filed a motion to appoint counsel for Defendants Kimberley and Jocelyn Steele. (ECF No. 106.) The Court knows of no basis for this motion, and it is denied.